# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Fiske

v.

Fiske

June 23, 1997

Case No. (Chancery) CH950462

BY JUDGE THOMAS A. FORTKORT

This case concerns an attorney's lien on a client's alimony payments. Ms. Fiske's (now Johnson) former attorney, Gwendolyn Jo Carlberg, filed a notice of attorney's lien. The lien attached to Confederation Life Insurance policies held by the Defendant, half of the pension plan in the Defendant's name, tax refunds distributed as a result of the Court's decrees in this case, personal and tangible properties received by the Complainant as a result of the decrees, and monies distributed to Complainant as a result of the decrees.

On December 11, 1996, this court ordered that Defendant pay his alimony payments into the Court instead of to the Complainant until the validity of the lien was determined. This matter was stayed for several months due to Ms. Johnson's filing of a bankruptcy petition. The bankruptcy court recently allowed the Complainant to proceed in this matter to determine ownership of the alimony payments.

The Complainant has moved the Court to release the payments held by the Clerk of Court to her and to award her fees and costs associated with this motion. Complainant asserts that the lien is invalid because an attorney's lien for fees cannot be asserted in a divorce action. Virginia Code § 54-3932 provides for the creation of a lien where the attorney was retained in a tort claim or a contract claim. This case does not fall into either of these categories. Thus, no lien for fees can be created under this statute in this case.

Under the common law, a lien can be created for attorney's fees, but the lien only attaches to items in the possession of the attorney. *See Stevens v. Sparks*, 205 Va. 128 (1964). Here, none of the items listed as being attached

by the lien are in the possession of the attorney. Therefore, the lien does not arise by operation of the common law.

The only way the lien can be valid is based on the retainer agreement. Ms. Johnson and attorney, Gwendolyn Jo Carlberg, contracted that the attorney would have a lien on the proceeds obtained in the divorce. This lien does not rely on statute or common law. It is a creature solely of contract. Complainant argues that the lien is invalid because it does not comply with the requirements of the Code for creation of a lien by attachment of property by a creditor. Here the parties have agreed to an alternative manner of the creation of a lien. A lien may be created by contract, as occurs frequently in the purchasing of an automobile. The creditor does not then have to comply with the Code provisions for obtaining a lien as a general creditor; instead, he complies with the specific requirements for perfection of the lien that apply to secured creditors. There are no specific Code provisions dealing with perfection of a lien for attorney's fees. Because there are no such provisions, Complainant argues that no lien can be created except by following the general rules for creating a lien by attachment. The bottom line of this argument is that no lien can be created by contract alone; instead, it must have some statutory basis. Complainant cites no authority for this argument. Liens can be established by contract alone. See *Williams v. Price*, 19 Va. (5 Munf.) 507 (1817).

There is a public policy argument which arises in connection with attorney's liens in divorce cases. Several Legal Ethics Opinions have addressed the propriety of attorneys asserting liens in domestic relations cases. The Committee has advised that "it is not *per se* improper, under D.R. 9-102(B)(1) for [the attorney] to assert a common law possessory lien, provided that the client is promptly notified of the release of the escrowed funds and that he immediately receives the excess portion of the funds along with a full accounting of the funds upon which [the attorney] is asserting the lien. The committee cautions that the determination of what can be done with the funds once the lien is asserted raises a legal question beyond the committee's purview. See D.R. 9-102(A)(2) and D.R. 9-102(B)(4). The committee believes that since termination of representation will be simultaneous with termination of the litigation, client's interests will not, under D.R. 2-108(D), be negatively impacted by the assertion of the lien."

Legal Ethics Opinion 1390 also lays out some of the various ethical considerations concerning the attorney-client relationship in domestic relations cases.

The contractual lien entered into between the parties prior to the conclusion of the litigation gives the attorney a proprietary interest in the

64

litigation which may conflict with her ethical duty to provide independent advice to her client. The Court concludes that the attorney's lien asserted against the Complainant's alimony payments is unenforceable as against public policy. The remaining property I understand is under the jurisdiction of the Bankruptcy Court and is not addressed in this opinion letter.